1
2
3
4
5
6
7
8
9
10

**United States District Court**
For the Northern District of California

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | | |
|---|---|---|
| MICHAEL P. SEELY, an individual, | ) | Case No.: 10-CV-02019-LHK |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER TRANSFERRING CASE TO |
| | ) | THE EASTERN DISTRICT OF NEW |
| CUMBERLAND PACKING CORP., a New | ) | YORK |
| York corporation, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## I.  INTRODUCTION

This is a false patent marking action brought under 35 U.S.C. § 292.  Plaintiff Michael P. Seely, a San Francisco resident, alleges that he purchased packets of the product "Sweet 'N Low," in San Francisco, California.  Compl. (Dkt. No. 1) ¶ 3.  Sweet 'N Low is manufactured and marketed by Defendant Cumberland Packing Corporation.  Compl. ¶ 5.  Seely alleges that Cumberland marked the packaging of its Sweet 'N Low product with an expired patent, U.S. Patent No. 3,625,711, intending to deceive the public in violation of 35 U.S.C. § 292.  Compl. ¶¶ 11-13. In response to Seely's complaint, Cumberland filed a Motion to Dismiss and a Motion to Transfer Venue under 28 U.S.C. § 1404(a).  *See* Dkt. Nos. 1, 9, 10.  The Court now considers the Motion to Transfer Venue.[1]  *See* Dkt. No. 10 (hereinafter "Motion").  Based on the papers submitted, and the

_____

[1] The Court has reviewed the Motion to Dismiss.  Because determination of this Motion depends on application of the law of the Second Circuit, and potentially on information regarding the scope of the settlement agreement in the *Public Patent* case (discussed below), the Court exercises its

1

Case No.: 10-CV-02019-LHK
ORDER TRANSFERRING CASE TO THE EASTERN DISTRICT OF NEW YORK

1   hearing on this matter held on December 16, 2010, Cumberland's Motion to Transfer is hereby

2   GRANTED.

3   **II. FACTUAL BACKGROUND**

4       Plaintiff Seely has brought suit against Defendant Cumberland Packing Corporation for

5   falsely marking its Sweet 'N Low product with the expired '711 patent.  Compl. ¶¶ 9-25.  Seely

6   resides in San Francisco, in the Northern District of California.  *See* Compl. ¶ 3.  Seely alleges that

7   he purchased mis-marked Sweet 'N Low product in San Francisco.  Compl. ¶ 9.  Seely's attorneys

8   list an address in the Central District of California as their business address.

9       Cumberland is a New York corporation whose principal place of business is in Brooklyn, in

10  the Eastern District of New York.  *See* Compl. ¶ 4; Isaacs Decl. ISO Motion (Isaacs Decl., Dkt. No.

11  12) ¶ 3.  Cumberland manufactures its products in Brooklyn, New York, and is managed from its

12  headquarters in Brooklyn.  *See* Isaacs Decl., ¶¶ 3-10.  Cumberland employs more than 400 people,

13  and over 85% of its employees work at its packing facility and offices in Brooklyn.  Isaacs Decl. ¶

14  4.  Cumberland states that it blends and boxes its Sweet 'N Low product in Brooklyn.  Isaacs Decl.

15  ¶ 6.  Cumberland also states that it boxes and stores some or all Sweet 'N Low in the Central

16  District of California.  Isaacs Decl. ¶5.[2]  Cumberland's art department, which designs the Sweet 'N

17  Low packaging, is located in Brooklyn.  Isaacs Decl. ¶ 8.  All of Cumberland's senior executives

18  work in Brooklyn, with the exception of Robert Bowen, Cumberland's head of sales, who works

19  from his home in Monarch Beach, California (in the Central District of California).  Isaacs Decl. ¶¶

20  4-5.  Cumberland's patent counsel is based in New York, as well as the two advertising agencies it

21  has used most recently.  *See* Isaacs Decl. ¶¶ 8, 9.

22      In response to an Order by this Court requiring that Cumberland list all Cumberland

23  employees or other persons with knowledge about the marking of Sweet 'N Low with the '711

24  patent, Cumberland submitted a declaration by its CEO, Steven Eisenstadt.  *See* Eisenstadt Decl.

25  (Attached to Dkt. No. 45).  Mr. Eisenstadt identifies all persons who have participated in decisions

26  discretion not to rule on this Motion before transferring this case to the Eastern District of New
    York.  *See Sinochem Int'l. Co. v. Malaysia Int'l. Shipping Corp.*, 549 U.S. 422, 431 (2007); *Pub.
27  Emps.' Sys. of Miss. v. Morgan Stanley*, 605 F.Supp.2d 1073, 1075 (C.D. Cal. 2009).
    [2] At the hearing on this Motion, counsel for Cumberland did not know what portion of boxing was
28  done in California or how much and why Sweet 'N Low was stored in California.

Case No.: 10-CV-02019-LHK
ORDER TRANSFERRING CASE TO THE EASTERN DISTRICT OF NEW YORK

United States District Court
For the Northern District of California

regarding placement of the '711 patent on Sweet 'N Low packaging. *Id*. All of the Cumberland employees identified work in Brooklyn, New York, with the exception of one former employee whose residence is in Warren, New Jersey. *Id*. In addition, Mr. Eisenstadt identifies six non-Cumberland employees with knowledge about decisions regarding placement of the '711 patent number on Sweet 'N Low. *Id*. Three of these individuals work in New York City; two work in Wrightstown, Wisconsin; and one works in Pittsburgh, Pennsylvania. *Id*. In addition, Mr. Bowen submitted a declaration stating that he has not participated in decisions relating to placement of the '711 patent on Sweet 'N Low packaging. *See* Bowen Decl. (Attached to Dkt. No. 45).

It appears to be undisputed that Cumberland's contacts with the Northern District of California are limited to sales and advertising of its product here. *See* Compl. ¶ 5. Additional California contacts, all in the Central District of California, include Mr. Bowen, a contract packaging company, and a distribution warehouse. *See* Isaacs Decl. ¶¶ 5, 10.

In 2009, a previous false patent marking suit was brought against Cumberland. *Public Patent Found., Inc. v. Cumberland Packing Corp.*, No. 09-cv-04360 (S.D.N.Y., filed May 6, 2009). In its complaint, like plaintiff Seely, Public Patent alleged false patent marking of the Sweet 'N Low product with the expired '711 patent. *Id*. This case was voluntarily dismissed by Public Patent on July 1, 2009, before Cumberland had answered the complaint. *Public Patent Found., Inc. v. Cumberland Packing Corp.*, No. 09-cv-04360 (S.D.N.Y., filed May 6, 2009) (Dkt. No. 7). At the hearing on the underlying Motion, counsel for Cumberland stated that the *Public Patent* action was dismissed pursuant to a settlement agreement, but that the terms of the agreement are confidential.

The Court considers these facts in determining whether transfer of venue is appropriate under 28 U.S.C. § 1404(a).

### III.  LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In the Ninth Circuit, the district court has discretion to transfer under 28 § 1404(a), depending on a "case-by-case consideration of convenience and fairness." *Jones v.*

3

Case No.: 10-CV-02019-LHK
ORDER TRANSFERRING CASE TO THE EASTERN DISTRICT OF NEW YORK

1    *GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (internal citation and quotation omitted).

2    The Court must consider public factors relating to "the interest of justice" and private factors

3    relating to "the convenience of the parties and witnesses."  *See Decker Coal Co. v. Commonwealth*

4    *Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  Such factors may include: (1) the location where

5    relevant agreements were negotiated and executed; (2) the state that is most familiar with the

6    governing law; (3) the plaintiff's choice of forum; (4) the parties' respective contacts with the

7    forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the

8    differences in the costs of litigation in the two forums; (7) the availability of compulsory process to

9    compel attendance of unwilling non-party witnesses; (8) the ease of access to sources of proof; (9)

10   the presence of a forum selection clause; and (10) the relevant public policy of the forum state, if

11   any.  *Jones*, 211 F.3d at 498-99.  The moving party bears the burden of showing that transfer is

12   appropriate.  *Jones*, 211 F.3d at 499.

13   **IV.  ANALYSIS**

14          **A.  Venue Is Available in the Eastern District of New York**

15          Transfer under 28 U.S.C § 1404(a) is only appropriate if the action could properly have

16   been brought in the transferee venue.  28 U.S.C. § 1404(a).  Cumberland is a New York

17   corporation whose principal place of business is Brooklyn, New York, in the Eastern District of

18   New York.  Therefore, Cumberland is subject to personal jurisdiction in New York and venue in

19   the Eastern District is proper under 28 U.S.C. § 1391(b), (c).  Having established that jurisdiction

20   and venue are proper in the Eastern District, the Court proceeds to weigh the interests of

21   convenience and justice to determine whether transfer is appropriate.

22          **B.  Plaintiff's Choice of Forum**

23          Seely's primary argument in opposition to the Motion is that his choice of forum must be

24   accorded great deference, and that Cumberland has cited "no authority holding that the venue

25   choice of a plaintiff pleading false patent marking is entitled to lesser deference."  Opp'n. to

26   Motion (Dkt. No. 28) at 6.  Accordingly, the Court addresses this factor first.  When deciding

27   whether to transfer venue, the Court "must balance the preference accorded plaintiff's choice of

28   forum with the burden of litigating in an inconvenient forum."  *Jones*, 211 F.3d at 498.  Generally,

4

United States District Court
For the Northern District of California

1  the plaintiff's choice of forum is treated with great deference, and only great inconvenience or

2  unfairness will justify transfer.  *See Creative Tech., Ltd. v. Aztech Sys.*, 61 F.3d 696, 703 (9th Cir.

3  1995); *Florens Container v. Cho Yang Shipping*, 245 F.Supp.2d 1086, 1092 (N.D. Cal. 2002),

4  citing *Sec. Investor Prot. Corp. v. Vigman*, 764 F.2d 1309, 1317 (9th Cir. 1985).

5        However, significant authority holds that the forum choice of a *qui tam* plaintiff, like Seely,

6  deserves little deference.  Seely brings his action *qui tam*, on behalf of the Federal government.

7  Compl. ¶ 3.  Like a class action plaintiff, a *qui tam* plaintiff, or relator, is one of many "potential

8  plaintiffs, all equally entitled voluntarily to invest themselves with the . . . cause of action and all of

9  whom could with equal show of right go into their many home courts . . . ."  *San Francisco Tech.,*

10  *Inc. v. Glad Prods. Co.*, No. 10-CV966, 2010 U.S. Dist. LEXIS 83681, at *24 (N.D. Cal. July 26,

11  2010), quoting *Johns v. Panera Bread Co.*, No. 08-1071, 2008 WL 2811827, at *2 (N.D. Cal. July

12  21, 2008), quoting *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947).  Thus,

13  "the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is

14  considerably weakened."  *Id.*

15        Substantial persuasive case law supports the principle that the choice of forum by a *qui tam*

16  plaintiff asserting patent mis-marking is entitled to little deference.  *See, e.g.*, *San Francisco Tech.*,

17  No. 10-CV-00966 at *28 (giving little weight to the forum choice of *qui tam* plaintiff in a patent

18  marking case); *accord Hollander v. Hospira, Inc.,* No. 2:10-CV-00235-JD, 2010 U.S. Dist. LEXIS

19  124090 at *13-14 (E.D. Pa. Nov. 22, 2010); *accord Simonian v. Hunter Fan Co.*, No. 10 C 1212,

20  2010 U.S. Dist. LEXIS 107766 at *7, (N.D. Ill. Oct. 7, 2010); *accord Lightspeed Aviation, Inc. v.*

21  *Bose Corp.*, No. 10-CV-239, 2010 U.S. Dist. LEXIS 106607 *4-5 (D. Or. Sept. 30, 2010).  In all of

22  these cases, district courts granted transfer of patent marking cases based in part on the minimal

23  deference due the *qui tam* plaintiff's choice of forum.  In addition, the Ninth Circuit has held that

24  "[i]f the operative facts have not occurred within the forum of original selection and that forum has

25  no particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to

26  minimal consideration."  *Pacific Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968).

27  In this case, the purchase of Sweet 'N Low packets could have taken place anywhere the product is

28  sold, meaning anywhere in the United States.  *See* Compl. ¶ 6 (alleging that Sweet 'N Low is

5

Case No.: 10-CV-02019-LHK
ORDER TRANSFERRING CASE TO THE EASTERN DISTRICT OF NEW YORK

available worldwide).  Consistent with the general law of *qui tam* actions and its application to 35

U.S.C. § 292 cases, the Court holds that Seely's choice of forum is due limited deference, and

weighs only slightly in favor of retaining this matter.

### C. The Remaining *Jones* Factors

Given that the Court accords little weight to the Plaintiff's choice of forum, it moves to the

other *Jones* factors.  Specifically, these factors are:  (1) the location where the relevant agreements

were negotiated and executed; (2) the state that is most familiar with the governing law; (4) the

parties' respective contacts with the forum; (5) the contacts relating to the plaintiffs cause of action

in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the

availability of compulsory process to compel attendance of unwilling non-party witnesses; (8) the

ease of access to sources of proof; (9) the presence of a forum selection clause; and (10) the

relevant public policy of the forum state, if any.  *Jones*, 211 F.3d at 498-99.  Because the majority

of the remaining factors weigh in favor of transfer or are neutral, the Court concludes that this case

should be transferred.

#### 1.  The location where the relevant agreements were negotiated and executed

There is no contract at issue in this action.  Thus, this factor is irrelevant to this analysis.

#### 2.  The state that is most familiar with the governing law

Cumberland does not argue that this factor weighs in favor of transfer, and the Court finds

that this factor is neutral.  Patent law is uniform across the United States.  The relevant law is

federal, and the Federal Circuit hears appeals from all districts.  Both the Northern District of

California and the Eastern District of New York are conversant with this governing law.  Because

both venues are equally adept in their application of federal law, this does not favor either party.

#### 4.  The parties' respective contacts with the forum

Because each party has contacts with its preferred forum, the Court likewise concludes that

this factor is neutral.  Plaintiff Seely is a resident of California and alleges that he has no contacts

with New York.  Compl. ¶ 3; Seely Decl. ISO Opp'n. (Dkt. No. 31) at ¶¶ 4-5.  As described above,

Cumberland is a New York corporation.  Cumberland's management, design, and manufacturing

6

functions occur in the Eastern District of New York.  *See* Isaacs Decl. ¶¶ 3-10.[3]  Furthermore, Cumberland's external advertising agency and patent counsel are based in New York.  *See* Isaacs Decl. ¶¶ 8-9.  Cumberland's primary California contacts consist of a distribution warehouse, a contract packaging company, and one sales executive who works out of his home.  *See* Isaacs Decl. ¶¶ 5, 10.  These contacts with California are minor in comparison to Cumberland's contacts with New York.  In sum, Seely and Cumberland each have contacts primarily with their respective desired forum.  This factor is thus neutral with respect to transfer.

     5.   The contacts relating to the plaintiff's cause of action in the chosen forum

Seely has substantial contact with California as a resident.  In addition, Seely alleges that he purchased Sweet 'N Low packets marked with the expired '711 patent in San Francisco.  The purchase supports Seely's allegation that Cumberland has "marked upon . . . an unpatented article" an expired patent number, which is an element of the claim of false patent marking.  *See* 35 U.S.C. § 292.  Plaintiff alleges that Cumberland sells Sweet 'N Low "throughout the United States and throughout the world," and that Cumberland advertises and sells Sweet 'N Low via its website. Compl. ¶¶ 6-8.  Plaintiff further alleges that Cumberland has sold Sweet 'N Low articles marked with the '711 patent "throughout the United States."  Therefore, Seely alleges that California residents are being misled by California sales of Cumberland's mis-marked Sweet 'N Low products.

However, weighed against Cumberland's New York contacts, these California contacts are of less significance to this case.  *See Lightspeed Aviation*, No. 10-CV-239 at *8-10.  Seely asserts

---

[3] Plaintiff objects to these statements in Mr. Isaacs' declaration on the basis that they "lack foundation" and that Mr. Isaacs does not identify all the individuals within these groups.  The Court finds that these statements have foundation in the personal knowledge of Mr. Isaacs, an executive (controller) employed by Cumberland.  The Court further finds that there is no requirement that Mr. Isaacs identify each individual in these groups in order to make these statements.  However, Plaintiff's objection to statements made on the basis of "information and belief" in Mr. Isaacs' declaration is sustained, as these statements are made with insufficient foundation.  Cumberland provided additional information regarding individuals involved in the decision to mark Sweet 'N Low with the '711 patent via the Eisenstadt and Bowen declarations. Seely objected to these declarations as lacking foundation, and as being conclusory and based on speculation.  Because the statements in these declarations are based on the personal knowledge of Steven Eisenstadt and Robert Bowen, the Court finds that there is adequate foundation for these statements.  Plaintiff's evidentiary objections to these additional declarations are therefore overruled.

Case No.: 10-CV-02019-LHK
ORDER TRANSFERRING CASE TO THE EASTERN DISTRICT OF NEW YORK

1   that Cumberland falsely marked its products with the intent to deceive the public.  Compl. at ¶¶ 13-

2   24.  Therefore, the "markings on the concerned products and Defendants' intention with respect to

3   marking the products with expired patents" are the facts most critical to proof of Seely's claims.

4   *See San Francisco Tech.*, No. 10-CV-00966 JF(PVT) at *33.  Cumberland has submitted

5   uncontroverted evidence that its management, design, manufacturing, advertising, and patent-law

6   related decisions all occur in New York, where Cumberland is headquartered.  *See* Isaac Decl. ¶¶

7   4-11.  In addition, Cumberland has submitted uncontroverted evidence that nearly all individuals

8   with knowledge regarding marking Sweet 'N Low with the '711 patent work in Brooklyn, New

9   York, or live in nearby New Jersey or Pennsylvania.  *See* Eisenstadt Decl.  Although it appears that

10  Robert Bowen has information regarding sales volumes, which could be relevant to damages, and

11  that two individuals working in Wisconsin have relevant information regarding the decision to

12  mark, the uncontroverted evidence shows that most or all decisions related to patent marking, as

13  well as the marking itself, occurred in New York.[4]  Thus, the overwhelming center of gravity of the

14  evidence is in New York.

15          In opposition, Seely argues that Cumberland's packing and shipping activities in California

16  are potentially relevant to his claims.  *See* Opp'n. at 10-11.  However, Cumberland's

17  uncontroverted evidence shows that all or nearly all of the relevant decision-making regarding the

18  Sweet 'N Low packaging occurs in New York.  Seely provides no evidence to support his

19  contention that the California packing company or warehouse employees would have any relevant

20  information regarding the decision to mark product and Cumberland's intention in marking.  Other

21  than Seely's purchase of Sweet 'N Low packets, little activity relevant to marking and the decision

22  to mark occurred in California.  Instead, the relevant decisions were made at Cumberland's

23  Brooklyn headquarters.  Therefore, overall, this factor weighs in favor of transfer.

24          6.   The differences in the costs of litigation in the two forums

25          Differences in litigation costs are weighted neutrally regarding transfer.  Seely argues that

26  the cost of litigation would be higher for him in the Eastern District of New York, and that because

---

27  [4] Cumberland's contract packaging company receives pre-printed packaging materials from
28  Cumberland, and is paid only to fill boxes.  The packaging company takes no part in any decision-
    making regarding the appearance of the packaging.  *See* Isaacs Decl. ¶ 5.

Case No.: 10-CV-02019-LHK
ORDER TRANSFERRING CASE TO THE EASTERN DISTRICT OF NEW YORK

1  Cumberland can more easily bear the higher cost of litigating, this factor weighs against transfer.

2  *See* Opp'n. at 12-13.  Seely's counsel is based in the Central, not the Northern, District of

3  California.  *See* Opp'n. at 12-13.  Therefore, Seely's counsel must travel regardless.  However,

4  Seely's cost of litigation will certainly be higher if he and his counsel must travel to New York and

5  retain local counsel.  While the inconvenience to counsel is not typically given any weight in the

6  transfer analysis, this will increase Seely's litigation costs.  *See In re Zimmer Holdings*, *Inc*., 609

7  F.3d 1378, 1381 (Fed. Cir. 2010) (giving no weight to convenience of party's litigation counsel in

8  applying the Fifth Circuit *forum non conveniens* factors).  However, Cumberland will be forced to

9  incur similar costs if the case remains in the Northern District of California, as it appears

10  Cumberland's counsel is based in Pittsburgh, Pennsylvania.

11        In addition to attorney-associated costs, Cumberland's costs if transfer is denied are likely

12  to be higher than Seely's costs if transfer is granted.  Seely states that he will have to miss work in

13  order to attend trial of this action in New York, potentially causing him to lose compensation.

14  Similarly, trial in California would likely present Cumberland with significant costs in both direct

15  travel expenses and business disruption, for multiple employees.  *See Ohio Art*, No. 10-CV230,

16  2010 WL 3155160 at *3 (W.D. Pa. July 30, 2010).  However, as a corporation, Cumberland can

17  likely absorb these costs more easily than Seely.  *See*, *e.g.*, *Healthtrac Corp. v. Caterpillar Inc.*,

18  No. C 05-2727, MHP 2005 U.S. Dist. LEXIS 25272 at *12-*13 (N.D. Cal. Oct. 26, 2005).

19  Therefore, on balance, litigation costs are weighted neutrally in the transfer analysis.

20        7.   The availability of compulsory process to compel attendance of unwilling non-party

21            witnesses

22        Generally, the Court's subpoena power extends outside the district only if the subpoena is

23  served "within 100 miles of the place specified for the deposition, hearing, trial, production or

24  inspection."  Fed. R. Civ. P. 45(b)(2).  Cumberland has identified employees of its advertising

25  firms and its patent attorneys as third-party witnesses potentially having relevant knowledge and

26  residing in New York.  *See* Isaacs Decl. ¶¶ 7-9.  Cumberland has also identified a number of third-

27  parties, including former employees and others, with knowledge about the decision to mark Sweet

28  'N Low with the '711 patent.  *See* Eisenstadt Decl.  Most of these third-parties reside or work in

9

Case No.: 10-CV-02019-LHK
ORDER TRANSFERRING CASE TO THE EASTERN DISTRICT OF NEW YORK

New York, New Jersey, or Pennsylvania; two reside in Wisconsin.  *Id.*  Subpoenas can be issued to compel trial attendance of many of these witnesses after transfer, and a trial in New York would pose a smaller burden to them.  *See id.*  Seely responds that the third-party employees of the Central District of California packing company and warehouse are "relevant third party witnesses," and that "these businesses will likely have relevant information and/or records."  Opp'n. at 11. However, because these witnesses work in the Central District of California, they are likely outside this Court's 100-mile subpoena power.  Furthermore, as discussed above, Seely presents no reason to think that the employees of the packing company or warehouse have any information relating to the decision to mark Sweet 'N Low, or the intent to deceive the public by marking.  To the extent Seely needs evidence of Cumberland's overall sales volumes, he may seek this discovery directly from Cumberland.

While neither party has presented a strong case for the importance of third-party witnesses, convenience of party witnesses also factors in the Court's decision.  *See Morris v. Safeco Ins. Co,* No. C 07-2890 PJH, 2008 WL 5273719, at *4 (N.D. Cal. Dec 19, 2008); 28 U .S.C. § 1404(a) ("for the convenience of parties *and witnesses*" (emphasis added)).  The Court considers the substantial burden that trial in California would impose on the decision-makers and other employees at Cumberland involved with determining patent marking.  Because all of these likely witnesses work in New York, their convenience weighs strongly in favor of transfer to the Eastern District of New York.

8.   The ease of access to sources of proof.

Cumberland's headquarters, most of its employees, its advertising firms, its art department, and its patent attorneys are in the New York area.  *See* Isaacs Decl. ¶ 7-9, 11.  Therefore, most documents produced by these employees and external professionals are likely in the New York area.   However, "[w]ith technological advances in document storage and retrieval, transporting documents does not generally create a burden."  *Van Slyke v. Capital One Bank*, 503 F. Supp. 2d 1353, 1362 (N.D. Cal. 2007).  Thus, this factor tips slightly in favor of transfer.

Case No.: 10-CV-02019-LHK
ORDER TRANSFERRING CASE TO THE EASTERN DISTRICT OF NEW YORK

1    9.   The presence of a forum selection clause

2    There is no contract or forum selection clause relevant to this action.  Therefore, this factor

3    is not relevant to the Court's analysis.

4    10. The relevant public policy of the forum state, if any

5    The Court considers whether transfer is in the broader interests of justice and public policy.

6    These considerations are neutral with respect to transfer.  Avoiding undue congestion in any venue

7    is one factor the Court may consider.  *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal.

8    2001).  Seely presents evidence that litigation proceeds more slowly in the Eastern District of New

9    York than in the Northern District of California, based on statistics published by the Administrative

10   Office for United States Courts, for 2009.[5]  *See* Spillane Decl. ISO Opp'n. to Motion at Ex. A.

11   Specifically, Seely points to a 1% higher rate of cases pending more than three years in the Eastern

12   District of New York compared to the Northern District of California, and an average difference of

13   eight months from filing to final disposition between the two Districts.  *Id.*  Seely asserts that this

14   relative delay is a public interest factor weighing against transfer.  Opp'n. at 13-14.  Because the

15   delay is not great, however, this factor weighs only slightly in favor of retaining the case.

16   The Court also finds that both Districts have an interest in protecting the integrity of the

17   patent system.  *See Stauffer v. Brooks Brothers, Inc.*, 619 F.3d 1321, 1324-26 (Fed. Cir. 2010)

18   (discussing the Federal Government's interest in upholding the patent system, in the context of

19   standing for claims under 35 U.S.C. § 292).  Because federal courts in both California and New

20   York have an equal interest in the integrity of the United States patent system, these interests are

21   neutral with respect to transfer.

22   The Court also considers the "imposition of jury duty on the people of a community that

23   has no relation to the litigation."  *Creative Tech.*, 61 F.3d at 703-04.  Seely's case is brought on

24   behalf of the Federal Government.  Compl. ¶ 3.  While California residents may share an equal

25   interest in resolution of this case when compared to residents of other states, jurors in California

---

26   [5] The Court takes judicial notice of the statistics published by the Administrative Office of the
27   Courts (available at http://www.uscourts.gov/Statistics.aspx).  Because these statistics are an
     official report of the United States government, they are "capable of accurate and ready
28   determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R.
     Evid. 201(b).

Case No.: 10-CV-02019-LHK
ORDER TRANSFERRING CASE TO THE EASTERN DISTRICT OF NEW YORK

**United States District Court**
For the Northern District of California

1    may have an interest in protecting citizens of this state from allegedly misleading activity on the

2    part of Cumberland.  *Cf. Creative Tech.*, 61 F.3d at 704 (affirming *forum non conveniens* dismissal

3    based in part on potential juror's lack of interest in assertion of copyright claim by foreign

4    corporation, finding that the "key interests in this dispute lie with the Singapore corporations, not

5    the American public.").  While no harm to the plaintiff need be alleged or shown, Seely alleges that

6    all members of the public, including California residents, are potentially being harmed by Sweet 'N

7    Low's false marking.  However, Eastern District of New York residents will also have a

8    connection to the case, as it alleges wrongdoing by Eastern District of New York resident

9    Cumberland and its employees.

10        Given the slightly increased congestion in the Eastern District of New York, and the facts

11    that both Districts have an interest in protecting the integrity of the patent system and in

12    adjudicating the facts of this case, overall public policy considerations tip slightly in the Plaintiff's

13    favor with respect to transfer.

14        However, in sum, the *Jones* factors weigh in favor of transfer to the Eastern District of New

15    York.  The relevant decisions were made in that District, most or all of the evidence will likely be

16    found there, and the relevant witnesses reside in that district or nearby.  In contrast, fewer events

17    relevant to the suit have occurred in the Northern District of California.

18    **V.  CONCLUSION**

19        Litigation in the Eastern District of New York is in the interests of justice and convenience.

20    Cumberland's Motion to Transfer Venue is therefore GRANTED.  Accordingly, this case is hereby

21    TRANSFERRED to the Eastern District of New York.

22    **IT IS SO ORDERED.**

23    Dated: December 20, 2010

                                                    *Lucy H. Koh*
24                                                  LUCY H. KOH
                                                    United States District Judge

25

26

27

28

12